34 P.3d 855 (2001)
109 Wash.App. 203
Timothy E. TINJUM, Appellant,
v.
ATLANTIC RICHFIELD COMPANY; Arco Products Company; Al Lawrence, Respondents.
No. 46976-2-I.
Court of Appeals of Washington, Division 1.
November 19, 2001.
*856 David Elliott Breskin, Claudia Kilbreath, Christopher L. Ottele, Short Cressman & Burgess, Seattle, Counsel for Appellant.
Clemens H. Barnes, Tracy M. Morris, Perkins Coie, Seattle, Counsel for Respondents.
KENNEDY, J.
Timothy Tinjum sought and we granted discretionary review of the trial court's denial of his motion for summary judgment, in which he argued that Atlantic Richfield Company, Arco Products Company (ARCO) violated the Washington Law Against Discrimination when it refused to employ him as a truck driver transporting petroleum within the State of Washington, on the sole ground that he is an insulin-dependent diabetic. Because a federal highway safety regulation prohibits employers from allowing insulin-dependent diabetics to drive commercial motor vehicles in interstate commerce, the dispositive issue is whether the position Tinjum sought involved moving petroleum in interstate commerce. The court denied Tinjum's motion for summary judgment, concluding that ARCO had an absolute defense to the handicap discrimination claim based on the federal regulation. But the record is not sufficiently developed for a determination as a matter of law that the job Tinjum sought involved transporting petroleum in interstate commerce. If the job did, the trial court's conclusion was correct, but if the position only involved transporting petroleum in intrastate commerce, ARCO does not have a defense to the handicap discrimination claim based on the federal regulation. The record also is insufficient for a determination as a matter of law that the position only involved transporting petroleum in intrastate commerce. Tinjum was the moving party (ARCO did not file a counter-motion seeking summary judgment). He has failed his initial burden of showing that he is entitled to summary judgment as a matter of law as required by CR 56(c). Accordingly, we affirm the trial court's denial of his motion, but on that basis rather than on the basis that ARCO has an absolute defense to the discrimination claim. We remand for additional discovery and such further proceedings as shall be consistent with this opinion.

FACTS
In June 1998, Tinjum, an insulin-dependent diabetic, applied for a position with ARCO as a commercial truck driver. The essential function of the position was to deliver petroleum from ARCO's terminal at Harbor Island to its retail service stations in Washington State. During the initial interview, Tinjum told Assistant Terminal Superintendent Al Lawrence that he had diabetes. He also informed Lawrence that he had clearance from the Department of Licensing based on a medical certificate allowing him to operate a commercial motor vehicle within the State of Washington, that he was able to drive safely, and that he had a history of driving safely for Texaco. Tinjum passed the interview and the driving test; he had the minimum qualifications for transporting petroleum by commercial motor vehicle; and *857 he had snow experience, a safe driving record, and in excess of the minimum qualifications for total driving experience.
Lawrence sent Tinjum's application to ARCO's medical director, Dr. Howard Strom. Lawrence told Dr. Strom that he could use Tinjum as an intrastate commercial truck driver. Dr. Strom reviewed Tinjum's medical records from Tinjum's treating physician, Dr. Silver. Although Dr. Strom had no specialized knowledge or training in the diagnosis, treatment, or understanding of diabetes, neither he, nor anyone else from ARCO, asked Dr. Silver whether Tinjum posed an unacceptable risk due to his condition. Dr. Strom did not conduct an individualized assessment of Tinjum's condition. He did not assess the risk, if any, that Tinjum posed as compared to any other drivers hired by ARCO. He did not examine Tinjum in any way. He concluded that Tinjum was not qualified for the position solely because he was an insulin-dependent diabetic and it was ARCO's policy not to hire insulin-dependent diabetics based on a federal highway safety regulation.
Lawrence informed Tinjum that ARCO was rejecting his application solely because he was an insulin-dependent diabetic and, therefore, did not meet a federal highway safety regulation. Tinjum wrote to Lawrence on July 16, 1998, urging him to reconsider and requesting that ARCO conduct an evaluation of his actual physical condition and ability to safely perform the job, by allowing him to undergo a company medical evaluation. Lawrence faxed the letter to ARCO's Human Resource Manager, Joan Rose.
Rose denied Tinjum's request. She did not interview Tinjum or his physician and did not speak with Strom or Lawrence. Her sole reason for denying Tinjum's request was that the company did not hire insulin-dependent diabetics.
In June 1999, Tinjum filed a complaint for handicap discrimination in violation of the Washington Law Against Discrimination, Ch. 49.60 RCW, claiming that ARCO discriminated against him because of his medical condition by refusing to hire him as an intrastate truck driver and by failing to accommodate his condition.
Tinjum moved for summary judgment as to liability for the refusal to hire claim.[1] ARCO defended on the ground that 49 C.F.R. § 391.41 prohibited it from employing insulin-dependent diabetics to transport goods in interstate commerce, and that the position Tinjum sought involved moving petroleum in interstate commercenotwithstanding the fact that it only required transporting petroleum within the confines of Washington. The trial court concluded that the federal safety regulation aforementioned provided a complete defense to Tinjum's discrimination claim. Accordingly, the court denied Tinjum's motion for summary judgment. The court certified the order for discretionary review by this court under RAP 2.3(b)(3). We granted discretionary review.
Such additional facts as are necessary to an understanding of our opinion will be discussed below.

DISCUSSION
We review summary judgments de novo. Summary judgment is proper if the pleadings, depositions, affidavits, and admissions, viewed in a light most favorable to the non-moving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); Pulcino v. Federal Express Corp., 141 Wash.2d 629, 638, 9 P.3d 787 (2000).
The Federal Highway Administration is an agency within the United States Department of Transportation. The Highway Administration has promulgated the Federal Motor Carrier Safety Regulations, which apply to "all employers, employees, and commercial motor vehicles, which transport property or passengers in interstate commerce." 49 C.F.R. § 390.3. The Safety Regulations define interstate and intrastate commerce:

*858 Interstate commerce means trade, traffic or transportation in the United States
(1) Between a place in a State and a place outside of such State (including a place outside of the United States);
(2) Between two places in a State through another State or a place outside of the United States; or
(3) Between two places in a State as part of trade, traffic, or transportation originating or terminating outside the State or the United States.
Intrastate commerce means any trade, traffic, or transportation in any State which is not described in the term "interstate commerce."
49 C.F.R. § 390.5.
The Safety Regulations also define employer, employee and commercial motor vehicle. An employer for purposes of the regulations includes any corporation engaged in a business affecting interstate commerce that owns, leases or assigns employees to operate commercial motor vehicles in connection with that business. An employee is any person employed by the employer who in the course of his or her employment directly affects commercial motor vehicle safety, including a driver of a commercial motor vehicle, a mechanic and a freight handler. And a commercial motor vehicle is any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle exceeds certain weight limitations. Id. It is undisputed that ARCO is an employer, that Tinjum is an employee and that ARCO's tanker trucks are commercial motor vehicles within the meaning of these definitionsif the position that Tinjum sought involved interstate commerce.
Employers who are engaged in interstate commerce are prohibited by 49 C.F.R. § 391.41 from employing insulin-dependent diabetics as commercial truck drivers.[2] Thus, if the position that Tinjum sought meant driving ARCO fuel tankers between two places in Washington "as part of trade, traffic, or transportation originating or terminating outside the State or the United States" as provided in 49 C.F.R. § 390.5, he was unable to meet a bona fide qualification for the jobwhich we conclude would be fatal to his disability discrimination claim. See RCW 49.60.180, which makes it an unfair practice for any employer to refuse to hire any person because of the presence of any physical handicap "unless based upon a bona fide occupational qualification[.]" So long as the position required transport of petroleum in interstate commerce, it is difficult to conceive of a better example of a bona fide occupational qualification than this: ARCO was simply prohibited by federal regulation from employing an insulin-dependent diabetic to transport petroleum in interstate commerce.[3]See Thoms v. ABF Freight Sys., *859 Inc., 31 F.Supp.2d 1119, 1122 (E.D.Wis.1998) (federal safety regulations barring insulin-dependent drivers from operating commercial motor vehicles in interstate commerce are absolute, and not subject to medical examiner discretion. (Citing Dep't of Transp., U.S. DOT InterpretationsMay 4, 1997 at § 391.41 question 3)). An employer does not discriminate by denying a job to a handicapped person who is not qualified to perform it. Clarke v. Shoreline Sch. Dist. No. 412, 106 Wash.2d 102, 121, 720 P.2d 793 (1986).
ARCO claims that the position Tinjum sought required transporting petroleum in interstate commerce based on the following facts: Crude oil originating in Alaska is transported to ARCO's refinery at Cherry Point near Ferndale, Washington. Petroleum is transported from the refinery to ARCO's facility on Harbor Island. And the petroleum is distributed by tanker truck to retail service stations within the State of Washington. ARCO reasons that the delivery from Harbor Island to the retail outlets is simply the last leg of the interstate journey that originated in Alaska, and thus is trade or traffic or transportation originating outside Washington State as defined in 49 C.F.R. § 390.5. Tinjum argues that the position did not involve interstate commerce because the product that is moved from Cherry Point to Harbor Island to retail service stations in Washingtonnamely petroleumis not the same product that came into the State from Alaskanamely crude oil, and thus affects only intrastate commerce.
The distinction is important because federal regulations allow States to qualify any driver engaged wholly in instrastate commerce through "a waiver program which can be demonstrated to be based on sound medical judgment combined with appropriate performance standards causing no adverse effect on safety." 49 C.F.R. Part 350, App. C Tolerance Guidelines for Adopting Compatible State Rules and Regulations. See also 49 C.F.R. § 350.341(h)(1)-(2). Although the federal government does not control intrastate commerce, states that wish to receive certain federal highway safety funds must adopt regulations that are consistent with the federal safety regulations, provided, however, that states can elect to adopt waiver programs within various tolerance guidelines contained in federal regulations.
The Washington Legislature created such a waiver program, effective July 21, 1995. See Ch. 46.32 RCW. RCW 46.32.020 grants the Washington State Patrol the authority to promulgate regulations to implement the waiver program, and the Patrol has done so. WAC 446-65-020 provides that drivers of commercial motor vehicles that operate solely in intrastate commerce and that require a commercial driver's license may receive Department of Licensing clearance for such licensure by obtaining a medical certificate with respect to certain medical conditions, including insulin-dependent diabetes. Obtaining a clearance pursuant to the rule requires a medical examiner to examine the individual and make a finding that the person is physically qualified to drive a commercial motor vehicle in accordance with specified safety requirements, and to complete a certificate to that effect. WAC 446-65-020(3). It is undisputed that Tinjum had this clearance. Thus, if the position Tinjum sought required him to drive a commercial vehicle that operates wholly in intrastate commerce, 49 C.F.R. § 391.41 does not provide ARCO with a defense to his discrimination claim.[4]
*860 Although ARCO argues (tepidly) that the record is sufficient to support a determination as a matter of law that the position Tinjum sought involved interstate commerce, it tacitly admits that more discovery needs to take place before such a determination can be made. We agree. And although Tinjum argues (strenuously) that the record is sufficient to support a determination as a matter of law that the position he sought only involved intrastate commerce, we conclude otherwise. Without limitation on such additional facts yet to be ascertained that the parties think relevant, we provide one example to illustrate the bases for our conclusion: Both sides present authority for the proposition that the characterization of transportation between two points within state lines as interstate commerce rather than intrastate commerce depends upon the essential character of the shipment as manifested by the shipper's fixed and persisting intent at the time of the original shipment from outside the state. But "[n]o set formula exists to determine the shipper's intent. Instead, the shipper's `fixed and persistent intent' must be drawn `from all the facts and circumstances surrounding the transportation.'" International Brotherhood of Teamsters v. I.C.C., 921 F.2d 904, 908-10 (9th Cir.1990). The record as developed to date is devoid of facts and circumstances surrounding the original shipment from which ARCO's fixed and persistent intent might be ascertained.
As the moving party, it is Tinjum's initial burden to show that he is entitled to judgment as a matter of law. CR 56(c). Tinjum failed to meet that burden, and so we affirm the trial court's denial of his motion for summary judgment on that ground.
Tinjum's request for attorney fees on appeal as authorized by RAP 18.1(a) and RCW 49.60.030(2) is premature. We deny the request without prejudice to Tinjum's right to renew the request before the trial court if he should ultimately prevail in his discrimination claim.
We remand for completion of discovery and such other proceedings as shall be consistent with this opinion.
ELLINGTON and COLEMAN, JJ., concur.
NOTES
[1] Tinjum did not seek summary judgment with respect to the claim of failure to accommodate; consequently, it is not before us.
[2] See 49 C.F.R. §§ 390.3; 391.11 (motor carrier may not permit person to drive in interstate commerce unless qualified); 49 C.F.R. § 391.41(b)(3) (physical qualifications for driving commercial motor vehicle in interstate commerce require that the driver have no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control).
[3] Tinjum presented uncontroverted evidence that ARCO had a blanket policy of not hiring insulin-dependent diabetics for its commercial transportation positions even if the position involved only transportation in intrastate commerce. Such a policy cannot survive scrutiny in a case involving only intrastate commerce. See E.E.O.C. v. Chrysler Corp., 917 F.Supp. 1164, 1173 (E.D.Mich. 1996) (blanket exclusions not mandated by federal law violate discrimination statutes and are to be given strict scrutiny), rev'd on other grounds, 172 F.3d 48, 1998 WL 879589 (6th Cir. 1998); Sarsycki v. United Parcel Serv., 862 F.Supp. 336 (W.D.Okla.1994) (employer could not justify its discriminatory policy with Department of Transportation regulations when not required by such regulations to do so); Frito Lay, Inc. v. Wisconsin Labor & Indus. Review Comm'n, 95 Wis.2d 395, 290 N.W.2d 551 (Ct. App.1980) (federal transportation regulations not a defense to discrimination claim brought by truck driver because position involved exclusively intrastate travel), aff'd, 101 Wis.2d 169, 303 N.W.2d 668 (1981). Thus, ARCO has an absolute defense to Tinjum's discrimination claim only if the position Tinjum sought involves interstate commerce. Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) is not to the contrary. There, the high court ruled that Albertson's was not required by the American Disabilities Act to hire a truck driver for a position affecting interstate commerce, despite the fact that the driver had obtained a waiver under a temporary and experimental waiver program run by the Federal Highway Administration for research purposes, when the program did not change the applicable safety regulations. Washington's federally approved waiver program, discussed infra, is neither temporary nor experimental, and it does change the regulatory standards for purposes of intrastate commerce.
[4] We reject Tinjum's contention that because the state waiver program was promulgated pursuant to federal regulations that specifically allow such programs, the federal and state regulations must be construed together to mean that drivers qualified under such state waiver programs are allowed to operate vehicles engaged in interstate commerce, so long as they only drive within the confines of their own states. Interstate commerce is defined for purposes of the federal safety regulations to include transportation between two places in a state as part of trade, traffic or transportation originating or terminating outside the state. 49 C.F.R. § 390.5. Tinjum's proposed construction would negate this definition of interstate commerce. Moreover, Tinjum's clearance under the state waiver program authorizes him to operate "only in intrastate commerce"[.] Clerk's Papers at 213. It does not authorize him to operate motor vehicles engaged in interstate commerce so long as he restricts his movements to places within the state borders. He cannot transport petroleum in interstate commerce, period.