Daryel **JERNIGAN**, Plaintiff,

v.

**BELLSOUTH TELECOMMUNICATIONS, LLC,** Defendant.

Civil Action No. 1:12–CV–3553–AT.

United States District Court, N.D. Georgia, Atlanta Division.

Signed March 31, 2014.

---

Edward D. Buckley, Paul Chichester, IV, The Buckley Law Firm, LLC, Atlanta, GA, for Plaintiff.

Tamera Monique Woodard, AT & T Southeast Legal Dept., Atlanta, GA, for Defendant.

## ORDER

AMY TOTENBERG, District Judge.

### I. OVERVIEW

This is an action for violation of Plaintiff's employment rights under the Americans with Disabilities Act, as amended by the ADAAA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq. This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R & R") [Doc. 61] that Defendant Bell-South Telecommunications LLC's ("Bellsouth") Motion for Summary Judgment [Doc. 42] be granted.

The Magistrate Judge found that Plaintiff failed to establish a prima facie case of disability discrimination because he could not perform some of the "essential" climbing and heavy lifting tasks required in his position as a service technician ("ST") and therefore, could not establish he was "qualified" under the ADAAA. However, the Magistrate Judge recommended that in the event the Court did not adopt this specific recommended finding, the Court should deny Defendant's Motion on Plaintiff's ADAAA claim because triable issues of fact existed as to whether BellSouth offered Plaintiff reasonable accommodations as required under 42 U.S.C. § 12112(b)(5). The R & R also recommended that Defendant's Motion for Summary Judgment be granted as to Plaintiff's retaliation claim. The Magistrate Judge found that Plaintiff's retaliation claim faltered because Plaintiff could not demonstrate that Defendant's reliance on its established job qualifications for the service technician position was pretextual, and accordingly, no evidence suggested that Plaintiff was retaliated against based on his request for disability accommodation. Finally, the Magistrate Judge recommended that Plaintiff's Title VII gender discrimination claim be dismissed after noting that Plaintiff did not oppose Defendant's Motion for Summary Judgment on this claim (Count 3).

Plaintiff has filed detailed objections to the Magistrate Judge's decision finding that Defendant's record evidence established as a matter of law that Plaintiff could not perform the essential requirements of his Service Technician position with or without accommodations. (Doc. 66.) Plaintiff also challenges the Magistrate Judge's determination that Defendant articulated legitimate, nondiscriminatory reasons for Plaintiff's termination that precluded the viability of Plaintiff's retaliation claim. Consistent with Plaintiff's apparent position in the summary judgment briefing, Plaintiff filed no objections to the Magistrate Judge's recommendation for judgment against Plaintiff on his Title VII gender discrimination claim. Defendant filed objections to the R & R's alternative findings and recommendation addressing

BellSouth's failure to accommodate Plaintiff. (Doc. 65.) Plaintiff in turn has filed a brief responding to Defendant's objections. (Doc. 68.)

The Court reviews a Magistrate Judge's R & R for clear error if no objections are filed to the report, and it may "accept, reject, or modify" these findings and recommendations. 28 U.S.C. § 636(b)(1). Where the parties do not file any objections, § 636 does not require the district court to review any issue in dispute de novo. On the other hand, if a party files objections, the district court must determine de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b).

As both parties filed timely, specific objections to the R & R findings and recommendations regarding Plaintiff's ADAAA claims, the Court reviews the Magistrate Judge's findings and recommendations in so far as they were objected to on a de novo basis but his findings and recommendations to which no objections posed on a clear error basis. Specifically, based on its review of the record, the Court finds that the R & R's unobjected to finding that Plaintiff suffered a disability that substantially limited a major life activity under the ADAAA is correct. *See* 42 U.S.C. § 12102(2)(A). Additionally, the Court finds that the Magistrate Judge's findings and recommendation as to Plaintiff's Title VII gender discrimination claim in Count 3 are correct and **ADOPTS** the Magistrate Judge's recommendation that summary judgment be granted as to this Count.

The Court has reviewed on a de novo basis the record in connection with Defendant's Motion for Summary Judgment on Plaintiff's ADAAA discrimination and retaliation claims. Based on its thorough review of the record, the Court finds that material issues of fact exist that preclude entry of summary judgment on Plaintiff's ADAAA discrimination claim as a matter of law. The Court further finds that the Defendant's objections to the Magistrate Judge's alternative recommendations as to accommodation issues are without merit. Finally, the Court finds that Plaintiff's retaliation claim is duplicative of his discrimination claim and that insufficient additional evidentiary grounds exist in the record to support the retaliation claim's survival past summary judgment.

## II. COUNT 1: PLAINTIFF'S CLAIM FOR DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA

The record is undisputed that Plaintiff Daryel Jernigan was an excellent long term employee at BellSouth, with first rate skills as a service technician and a dedicated work ethic. The Court views the rest of the evidence in the light most favorable to Plaintiff as the non-movant and resolves all factual disputes in the non-movant's favor, as it must on summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). While a variety of tasks were involved in performing the duties of a service technician, the function of the position was to install, repair, or test phone lines, cables, internet, computer and other telecommunications equipment and services to ensure or correct operability. BellSouth employed approximately 85 to 100 service technicians in the Atlanta region during the time at issue in this case. (*See* Dep. of J. Carter at 19, 46.)

In December 2010, Jernigan was injured on the job and suffered a back injury that resulted in a back impairment restricting Jernigan's ability to lift weight of more than 15 pounds and to climb poles. When he returned to work several months later, Plaintiff was classified as "temporarily disabled." Jernigan was given light duty ac-

commodations which entailed the company's assigning him the great majority of his regular Service Technician duties but manually overriding or accommodating assignments that required heavy lifting or climbing. Plaintiff's supervisors testified that they were prepared at least to accommodate Plaintiff's condition for 365 days from the date of his injury. Approximately three months later after Jernigan returned to work, he was medically classified as "permanently disabled" with the same disabling limitations. However, Plaintiff's highest level supervisor, area manager Johnnie M. Carter, testified that once Plaintiff was classified as "permanently disabled" he (Carter) was immediately deprived of the authority to offer Plaintiff any accommodations pursuant to Bell-South's Human Resources ("HR") policies and collective bargaining agreement (Dep. of J. Carter at 77.) To his knowledge as area manager, an accommodation had never been provided to anybody with a permanent disability. (*Id.* at 78.) Plaintiff's immediate supervisor, Jimmy Mann, similarly testified, "No, we would not accommodate a permanent disability" when asked as a matter of policy whether Bell-South would accommodate a permanent as opposed to temporary disability. (Dep. of J. Mann at 52.) Thus, once Plaintiff was qualified as permanently disabled, Bell-South ceased any effort to accommodate Plaintiff in his service technician position, notified Plaintiff he would be terminated from the Service Technician position, and routed Plaintiff into the alternative internal job placement process provided under the Company's policies and collective bargaining agreement. Subsequently, Jernigan determined that he could not secure an alternative internal permanent position consistent with his qualifications and accommodation needs at a salary equivalent to his service technician position. He in turn exhausted his leave and was then removed from the Company's payroll.

To state a claim of disability discrimination, a plaintiff must prove three elements: (1) that he has a disability within the meaning of the ADAAA; (2) that, with or without reasonable accommodations, he can perform the essential functions of the job he holds; and (3) that he was discriminated against because of his disability. *Holly v. Clairson Indus., LLC,* 492 F.3d 1247, 1256 (11th Cir.2007). Upon a showing by the plaintiff that a reasonable accommodation exists, the burden shifts to the employer to prove that that the plaintiff's requested accommodation imposes an undue hardship. *Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir.1998). "[E]stablishing that a reasonable accommodation exists is part of an ADA plaintiff's case, whereas undue hardship is an affirmative defense to be pled and proven by an ADA defendant." *Willis v. Conopco, Inc.,* 108 F.3d 282, 286 (11th Cir.1997).

Plaintiff argues that the R & R here ignores relevant evidentiary disputes and testimony, relies almost exclusively on the employer's job description, and fails to pay heed to relevant EEOC guidelines[1] in weighing evidence and determining that Plaintiff was not qualified to perform essential duties of the service technician position with reasonable accommodations, a determination that should be made by the jury in this case. Plaintiff presented evidence through his own testimony as well as testimony of his area manager, immediate supervisor, and co-worker to establish that heavy lifting and climbing are not core duties of the service technician position and that Plaintiff's lifting and climbing restrictions can be reasonably accommodated by BellSouth as evidenced during

---

1. *See* 29 C.F.R. § 1630.2(n)(2).

Plaintiff's period of temporary disability work in the job.[2] Plaintiff argues that the Magistrate Judge legally erred in two significant ways. First, the Magistrate Judge erred in his analysis of applicable case law and regulations in assessing that as a matter of law Jernigan was not qualified with accommodations to perform the essential functions of the service technician position because of his physical restrictions in performing heavy lifting and climbing duties that fall within the core duties of the service technician. Second, the Magistrate Judge erred by conflating Plaintiff's burden to establish his qualification to perform the essential qualifications of the job with or without accommodations with the employer's burden to show that an undue burden would be imposed by providing the employee's requested accommodations.

■ Upon review of the record and with the additional benefit of the Eleventh Circuit's most recent case analyzing qualification and accommodation issues, *Samson v. Federal Express Corp.*, 746 F.3d 1196 (11th Cir.2014), the Court finds that genuine factual disputes exist as to whether (a) Plaintiff was qualified for the service technician position if provided reasonable accommodations, and (b) Defendant provided Plaintiff with reasonable accommodations as required by the ADAAA. In *Samson*, the Court of Appeals reversed the district court's reliance on Federal Express Corp.'s ("FedEx") use of its stated job qualification requirements incorporating a federal commercial motor carrier licensure standard when the company determined that the plaintiff could not perform the

essential function of test-driving its trucks with or without reasonable accommodation. By virtue of his diabetic condition, the plaintiff in *Samson* could not pass the medical examination required for operation of a commercial motor vehicle in interstate commerce under federal regulations. FedEx therefore withdrew its offer of the position to the employee and in essence, screened out diabetic employees from eligibility for the position. There were disputed facts in the record as to whether these driving duties were in fact marginal to the technician position job duties as a whole in actual practice, whether the federal licensure requirement should have been necessary, and whether any driving duties requiring such federal licensure could be reassigned to other employees. As in the instant case, there was no dispute that the plaintiff in *Samson* was highly qualified to perform the core functions of the technician position at issue.

First, the Eleventh Circuit noted in its legal analysis that, "[w]hether a particular job function is essential is "evaluated on a case-by-case basis by examining a number of factors." *Samson*, 746 F.3d at 1200–01, 2014 WL 1226847, at *4 (quoting *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1230 (11th Cir.2005)). Then, after recognizing that the question of whether a job function is essential is generally not suitable for resolution on a motion for summary judgment, the court explained that "[a]lthough the employer's judgment is 'entitled to substantial weight in the calculus,' this factor alone is not conclusive." *Id.* (quoting *Holly*, 492 F.3d at 1258). The

---

**2.** Plaintiff presented evidence regarding the relative infrequency of the need to lift more than 120 pounds (less than 5% of the time) and perform other lifting and climbing tasks at issue in connection with Plaintiff's physical limitations. Service technicians also are routinely called through the "helper" ticket system to assist fellow technicians in performing heavy lifting and a variety of other duties as needed. Plaintiff further adduced evidence that BellSouth managers are easily able to override the computer dispatch system so as to assign service technicians jobs without heavy lifting or pole climbing tasks or other various requirements.

court reasoned that if it were conclusive, "then an employer that did not wish to be *inconvenienced* by making a reasonable accommodation could, simply by asserting that the function is 'essential,' avoid the clear congressional mandate that employers 'mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability....'" *Id.* (quoting *Holly*, 492 F.3d at 1258 (citing 42 U.S.C. § 12112(b)(5)(A)) (alteration in original))

The court then proceeded to apply all factors set forth in the applicable EEOC regulations and guidelines in reviewing the evidence. *See* 29 C.F.R. § 1630.2(n)(1)-(3).[3] The court gave substantial weight to FedEx's judgment, its written job description, and other evidence that test-driving and possession of a commercial driver's license were necessary elements of the technician position and that adverse consequences potentially endangering the public might result if the technician did not possess this driving qualification and could not perform the associated driving duty. The court also credited FedEx's position that test-driving might be a "highly specialized"

job function. It determined, however, that other factors weighed "in favor of finding that test-driving is not an essential function of the Technician position." *Samson*, 746 F.3d at 1202, 2014 WL 1226847, at *5. The court considered employees' testimony reflecting their actual performance of their duties, the lack of regularity in the need for performance of such driving duties, the relatively small amount of time devoted to such duties, and the availability of nine other truck drivers to whom plaintiff's driving duties could be distributed. Viewing all record evidence and reasonable inferences in the light favorable to the plaintiff, the court concluded that reasonable jurors could differ regarding whether test-driving FedEx trucks constituted an essential function of the technician position.

The record in the instant case, viewed in the light most favorable to Plaintiff similarly provides an ample basis upon which a reasonable jury could determine that Plaintiff met BellSouth qualification requirements for the Service Technician position if reasonable accommodations were provided.[4] Defendant's argument regard-

---

**3.** 29 C.F.R. § 1630.2(n) in substance provides:

(n) Essential functions—
(1) In general. The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.
(2) A job function may be considered essential for any of several reasons, including but not limited to the following:
(i) The function may be essential because the reason the position exists is to perform that function;
(ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

(3) Evidence of whether a particular function is essential includes, but is not limited to:
(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii) The amount of time spent on the job performing the function;
(iv) The consequences of not requiring the incumbent to perform the function;
(v) The terms of a collective bargaining agreement;
(vi) The work experience of past incumbents in the job; and/or
(vii) The current work experience of incumbents in similar jobs.

**4.** The Court recognizes that the evidence in *Samson* suggests that the Plaintiff's commercial driving duties appeared to be more infrequently required than in the instant case. On

ing the essential functions of the position, as adopted by the Magistrate Judge, may ultimately win the day. However, the jury might also conclude that the heavy lifting and climbing duties, which Plaintiff could not physically perform, constituted a very small percentage of the duties and work hours of a service technician and could be reasonably accommodated. This was not a specialized job. Approximately 85 to 100 service technicians worked in the Service Technician position regionally. BellSouth already maintained and regularly utilized an institutionalized process—"helper tickets"—for technicians to be dispatched upon request to assist other technicians in performing duties that were either technically or physically difficult for whatever reason for an employee to perform. These tickets were issued on a routine basis every week and never turned down in the experience of the supervisors and employees providing deposition testimony. BellSouth manually was able to override its computer job dispatching "ticket" system to avoid assigning job tickets that required lifting or climbing duties to Plaintiff, as it did for other employees in a variety of other capacities. While the company might be able to show that such a manual override process would impose an "undue burden" if required on a permanent basis at trial, the Defendant has not at this juncture presented sufficient concrete, specific evidence to prove this undue burden for the Court to sustain this position as a matter of law. Indeed, Plaintiff's supervisors testified that they did not perceive these adjustments as imposing an undue burden.[5]

BellSouth contends that reassignment of Plaintiff's heaviest duties to other employees would entail an unfair distribution of Jernigan's more "heavy" work duties to other employees. The Magistrate Judge accepted this explanation as a further indicator that Plaintiff could not as a matter of law be deemed to be qualified with accommodations to perform the essential functions of the service technician position. However the purported "unfairness" of accommodations entailing reassignment of a minor portion of the duties of a disabled employee where many employees are available to perform such duties does not as a matter of law mean that the accommodation is per se unreasonable. *See Samson,* 746 F.3d at 1202–03, 2014 WL

---

the other hand, FedEx's focus on federal licensure requirements and specific medical and safety driving risks potentially associated with plaintiff's diabetic condition in combination with its insistence on the need for this federally regulated commercial test-driving as a critical part of the technician job might elevate the importance of the qualification issues there as compared to this case. *Compare with Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1527 (11th Cir.1997) (affirming district court grant of summary judgment where in a small police department a visually impaired police officer's inability to perform the job function of collecting certain kinds of evidence from a crime scene in performing his core investigative function was deemed critical, even though the evidence collection duty was infrequently performed). Moreover, in this case, there was evidence of potential effective accommodation methods and the availability of a far larger pool of service technicians to the extent that some duty reassignment was required. In any event, once again, this case, like *Samson,* presents fact specific circumstances and issues that a jury must resolve.

5. The Court notes that the Magistrate Judge excluded consideration of Mr. Carter's and Mr. Mann's agreement at their respective depositions that accommodations provided to Plaintiff were not an "undue burden" because he viewed the question as calling for a legal conclusion. (Doc. 61 at 37, n. 6.) However, the Court may consider this testimony as evidence regarding the relative imposition (or not) of the adjustments required for Mr. Jernigan in the workplace as opposed to an admission as a matter of law regarding the legal issue of "undue burden."

1226847, at *5. As the Eleventh Circuit discussed more broadly in *Holly:*

> [T]he very purpose of reasonable accommodation laws is to require employers to treat disabled individuals differently in some circumstances-namely, when different treatment would allow a disabled individual to perform the essential functions of his position by accommodating his disability without posing an undue hardship on the employer. Allowing uniformly-applied, disability-neutral policies to trump the ADA requirement of reasonable accommodations would utterly eviscerate that ADA requirement. As the Supreme Court has explained:
>
> > [P]references will sometimes prove necessary to achieve the Act's basic equal opportunity goal. The Act requires preferences in the form of "reasonable accommodations" that are needed for those with disabilities to obtain the *same* workplace opportunities that those without disabilities automatically enjoy. By definition any special "accommodation" requires the employer to treat an employee with a disability differently, i.e., preferentially. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself

place the accommodation beyond the Act's potential reach.

> Were that not so, the "reasonable accommodation" provision could not accomplish its intended objective."

*Holly,* 492 F.3d at 1262–63 (quoting *US Airways, Inc. v. Barnett,* 535 U.S. 391, 397–98, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)).

 Plaintiff's Area Manager and his immediate supervisor testified clearly that they thought the collective bargaining policy removed both the obligation and opportunity for the department to make accommodations for Plaintiff to continue his work as a service technician once he was classified as "permanently disabled." Yet there is no verbiage in the relevant provision (¶ 8.06) of the Collective Bargaining Agreement that has been presented to the Court that requires BellSouth not to provide reasonable accommodations to a permanently disabled employee, including potentially reassignment of marginal job duties. (Ex. 27 to Dep. of J. Carter.)[6] Indeed, such a rigid policy or provision precluding accommodations, if indeed in place as the evidence may suggest, would run contrary to the mandates of the ADAAA.[7]

---

6. Instead, this section of the union contract simply states that "an employee who has been determined to be permanently medically restricted is one who, due to permanent physical or mental limitations, is no longer able to perform the essential functions of his/her job, with or without reasonable accommodations." The section then identifies the bumping and rights to priority consideration of employees with permanent medical restrictions.

7. Under the ADAAA, a reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). However, an employer is not required to provide an employee with "the maximum accommodation or every conceivable accommodation possible." *Stewart v. Happy Herman's Cheshire Bridge,* 117 F.3d 1278, 1285 (11th Cir. 1997) (quoting *Lewis v. Zilog, Inc.,* 908 F.Supp. 931, 947 (N.D.Ga.1995) (Hull, J.)). Moreover, the fact that the statute lists a possible accommodation does not mean that such accommodation is per se reasonable. *Terrell,* 132 F.3d at 626. The accommodation must also be reasonable based on the specific circumstances of the employer-employee relationship at issue. *Id.; Stewart,* 117 F.3d at 1285.

Finally, the Court has reviewed Defendant's objections to the Magistrate Judge's alternative finding and recommendation that in the event the Court did not adopt the R & R finding that "lifting and climbing" were essential job duties that could not be accommodated, a genuine issue of material fact exists regarding whether BellSouth properly provided Plaintiff with accommodations. For the reasons discussed in the Magistrate Judge's R & R as well as those discussed above, the Court finds that sufficient record evidence exists to create triable jury issues on all accommodation issues.

A jury could reasonably resolve the factual disputes as to qualification and accommodation issues for either party in this case. Accordingly, the Court **SUSTAINS** Plaintiff's objections with respect to the R & R findings and recommendation as to Count 1 and **OVERRULES** Defendant's objections to the R & R "alternate" findings and recommendations on accommodation issues, subject to the findings noted herein.

### III. COUNT 2; ADAAA RETALIATION CLAIM

 The Court finds that Plaintiff's retaliation claim is essentially a reclothed version of his ADAAA discrimination claim asserted in Count I. *See, e.g., Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir.2001) (affirming dismissal of an ADAAA retaliation claim premised on the defendant's failure to provide reasonable accommodations, finding that the retaliation claim "merely reclothes [the plaintiff's] ADAAA discrimination claim, which [the court had] already rejected"); *Perez v. Sprint/United Mgmt. Co.*, No. 1:12–cv–3161–MHS, 2013 WL 6970898, at *n. (N.D.Ga., Dec. 19, 2013) (dismissing retaliation claim as a "duplicate of [the plaintiff's] discrimination claim under the ADAAA"). Plaintiff does not present an independent evidentiary basis upon which the retaliation claim may be anchored. Nor does Plaintiff present legal authority in his objections that might undermine the Magistrate Judge's analysis in the framework of the facts of this case that "simply denying a requested accommodation is not itself retaliation, at least without additional facts." (Doc. 61 at 57.) While the denial of an accommodation certainly can constitute retaliation under specific factual circumstances, in this case, there appears to be no probative evidence that suggests Defendant's supervisory officials did not actually rely (whether properly or not) on the company's view of applicable job requirements and procedures as legitimate non-discriminatory grounds for their actions. Accordingly, the Court **ADOPTS** the Magistrate Judge's ultimate determination that Defendant's Motion should be granted as to Plaintiff's ADAAA retaliation claim (Count 2).

### IV. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment [Doc. 42]. The Court **ADOPTS** the R & R finding that Plaintiff was a disabled individual protected under the ADAAA. The Court **SUSTAINS** Plaintiff's objections to the R & R's findings and recommendations as to Plaintiff's ADAAA discrimination claims in Count I [Doc. 66]. The Court **OVERRULES** the Defendant's objections to the R & R's "alternative" findings and recommendations as to ADAAA accommodation issues in Count I of Plaintiff's Complaint [Doc. 65] and **ADOPTS** the R & R's alternative findings and recommendations as to these accommodation issues. [Doc. 61 at 46–49.] The Court therefore **DENIES** Defendant's Motion for Summary Judgment [Doc. 42] with respect to Plaintiff's ADAAA discrimination and accommodation claim (Count I).

The Court **ADOPTS** the R & R's findings and recommendations as to Plaintiff's ADAAA retaliation claim (Count 2) and therefore **GRANTS** Defendant's Motion for Summary Judgment [Doc. 42] on Count 2. The Court **ADOPTS** the R & R's findings and recommendations as to Plaintiff's Title VII gender discrimination (Count 3) and therefore **GRANTS** Defendant's Motion for Summary Judgment [Doc. 42] on Count 3.

The parties are **DIRECTED** to engage in mediation of this matter. The parties may mutually agree upon a private mediator or if unable to reach an agreement, the Court will appoint a private mediator from a list of three mediators to be provided to the parties. The parties **SHALL** notify the Court within ten (10) days if they are unable to agree upon a mediator. The mediation in this matter **SHALL** be completed within forty-five (45) days of the entry of this Order. In the event the parties fail to reach an agreement, they **SHALL** submit their proposed Consolidated Pretrial Order within twenty (20) days of the conclusion of the mediation.

**IT IS SO ORDERED.**