[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11395

Non-Argument Calendar

_____

SCOTTIE LEWIS,

Plaintiff-Appellant,

*versus*

GEORGIA POWER COMPANY,

Defendant-Appellee,

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:19-cv-00173-LAG

_____

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Scottie Lewis appeals the summary judgment for his former employer, Georgia Power Co., on his discrimination and retaliation claims under the Americans with Disabilities Act. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Lewis began working as a lineman at Georgia Power in 2001, and he held that same position until his termination in 2019. He also suffers from monocular vision: he has been blind in his right eye since the age of five. Lewis's condition didn't affect his ability to perform his work normally, but it did mean that he needed a medical examiner's certification, plus a federal vision waiver, to obtain a commercial driver's license (CDL). Georgia Power required all of its linemen to have a valid CDL to drive its company vehicles. To keep his CDL valid, Lewis needed to submit paperwork for his federal vision waiver every two years.

Georgia Power considered a CDL as "essential" to a lineman's job functions. Linemen did not necessarily drive a commercial vehicle every day, and whether any particular lineman needed to do so was "unpredictable." It was uncommon that all four members of a line crew would need to drive vehicles to a job site. But various conditions could increase the need for more drivers: broken electric poles, multiple simultaneous failures, severe storms, and the like. Lewis drove both a pickup truck and commercial vehicles as a lineman, but he only drove the commercial vehicles

around four days per month. Still, Georgia Power required a valid CDL for linemen to drive even non-commercial vehicles, including a pickup truck, while on duty. Its policy permitted reasonable accommodations for a lineman who lost his CDL due to medical circumstances. But Georgia Power would not offer modified job duties to an employee after more than one loss of a CDL for a *non-*medical reason.

In 2007, Lewis's CDL was suspended following a traffic citation for driving under the influence of alcohol. Ten years later, in 2017, he lost his CDL for thirty days while he waited for the government to approve the paperwork he'd submitted to renew his federal vision exemption. He asked Georgia Power to accommodate him while his vision exemption was processed, and Georgia Power permitted him to work without driving a company vehicle for thirty days until his CDL was reinstated. Beverly Turner—then the supervisor of Georgia Power's disability management department—helped Lewis fill out the accommodation paperwork, and she categorized his accommodation request as related to a medical circumstance.

In 2019, Lewis's vision exemption expired again—automatically suspending his CDL—because he didn't submit paperwork in time for it to be approved. The day his CDL expired, Lewis asked his supervisor for the same accommodation he'd requested in 2017—to work without driving until his CDL was reinstated. This time, when Ms. Turner reviewed Lewis's application for an accommodation, she told Lewis's supervisor that the failure to timely

submit paperwork was not a medical issue.  Georgia Power's labor relations supervisor reviewed Lewis's files and determined that Lewis's 2017 accommodation had been "mishandled" as a medical issue because he lost his license for submitting paperwork too late, not because of his monocular vision.  Lewis's supervisor and other management then decided to terminate Lewis; his termination letter stated that he was being discharged for failing to maintain a valid CDL for non-medical reasons in 2007, 2017, and 2019.

Lewis sued Georgia Power in 2019.  He alleged that Georgia Power had violated the Americans with Disabilities Act through failure to reasonably accommodate his disability (count one), intentional discrimination on the basis of disability (count two), and retaliation against his request for an accommodation (count three).  After discovery ended, Georgia Power moved for summary judgment.

The district court granted summary judgment for Georgia Power.  As to the intentional-discrimination and reasonable-accommodation claims, the district court concluded that Lewis was not a "qualified individual."  To be a qualified individual under the Americans with Disabilities Act, Lewis had to present summary judgment evidence that, with or without a reasonable accommodation, he could perform the essential functions of his job.  But, the district court explained, the summary judgment evidence showed that having a valid CDL was an essential function of Lewis's lineman job.  His "failure to maintain his CDL made him unqualified for the position at the time of his termination."

As to the retaliation claim, the district court concluded that Lewis's "adverse employment action—his termination—was caused not by a request for an accommodation, but by his own failure timely to submit his vision exemption paperwork." Lewis, the district court explained, "admitted during his deposition that he was not terminated in retaliation for requesting an accommodation."

Lewis appealed the summary judgment for Georgia Power.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the nonmoving party. *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1333 (11th Cir. 2022). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## DISCUSSION

Lewis alleged three counts in his complaint—(1) failure to accommodate his disability, (2) intentional discrimination against his disability, and (3) retaliatory discharge—all in violation of the Americans with Disabilities Act. We address the discrimination claims together first, then turn to the retaliation claim.

### Discrimination

The Americans with Disabilities Act prohibits employers from taking adverse employment action "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). An employer can violate section 12112(a) either by intentional discrimination or by failing to make a reasonable accommodation for an employee's disability. *Id.* § 12112(b)(5)(A); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). Under either theory of discrimination, a plaintiff must show that "he was a 'qualified individual' at the relevant time, meaning he could perform the essential functions of the job in question with or without reasonable accommodations." *Id.* (citing *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000). "If the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." *Holly v. Clairson Indus.*, 492 F.3d 1247 (11th Cir. 2007) (quoting *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005)).

"Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors." *Lewis v. City of Union City*, 934 F.3d 1169, 1182 (11th Cir. 2019) (quoting *D'Angelo*, 422 F.3d at 1230). Those factors include "the employer's judgment of whether a particular function is essential," *id.*, as well as: a "written job description prepared before . . . interviewing applicants for the job; the amount of time spent on the job performing the function; the consequences of not requiring the employee to perform

the function"; and whether the requirement applies to "past employees in the job" or "employees in similar jobs." *Id.* (quoting *Sampson v. Fed. Exp. Corp.*, 746 F.3d 1196, 1201 (11th Cir. 2014)); *see also* 29 C.F.R. § 1630.2(n)(3).

A job function can be essential even if an employer insists on it merely to improve its responsiveness to customers' needs. In *Davis v. Florida Power & Light Co.*, for example, the plaintiff worked for a power company that required its technicians to work overtime when necessary to restore power outages the same day they occurred. 205 F.3d 1301, 1303 (11th Cir. 2000). The plaintiff had suffered a back injury and sought a light duty schedule where he didn't need to work overtime, but the power company suspended him for refusing to work the extra hours. *Id.* at 1304. We held that the plaintiff was not a qualified individual under the Americans with Disabilities Act because the ability to work overtime was an essential function of his job: the plaintiff agreed to it as a job requirement when he hired on, the power company relied on unpredictable overtime work to guarantee customers a same-day power restoration, and overtime work comprised a "substantial amount" of employees' schedules. *Id.* at 1305. Because overtime was necessary to fulfill the plaintiff's job requirements, we concluded that refusing to work overtime essentially amounted to refusing to show up for work. *Id.* at 1306.

Here, having a CDL was an essential function of Lewis's lineman job. Like the overtime requirement in *Davis*, Georgia Power's company policy required its linemen to have a valid CDL.

And, while driving a company vehicle was not necessary every day, it still comprised a "substantial amount" of Lewis's job—some ten to twenty hours per week, and roughly four days per month driving a commercial vehicle that Georgia law required a CDL to operate. *Cf. Davis*, 205 F.3d at 1305 (holding that two hundred hours of annual overtime—less than twenty hours per month—constituted a "substantial amount" that weighed in favor of overtime being an essential job function). As in *Davis*, Lewis's supervisor testified that it was unpredictable when all four linemen on a crew team would need to operate a vehicle at a job site. Finally, if a crew member didn't have a CDL when he needed to drive, he needed to be replaced with another crew member, so the consequences of Lewis's lack of a CDL meant that Georgia Power would need to pay someone else to cover for him. The district court correctly concluded that having a CDL was an essential function of Lewis's job.

Lewis argues that having a CDL was not an essential job function because he mostly drove a pickup truck, which he did not need a CDL to do under Georgia law. He doesn't dispute that Georgia Power required a CDL for him to drive its pickup trucks, but he contends this requirement was "arbitrary" and thus not essential. But, as the district court correctly noted, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (marks omitted)). Lewis doesn't

argue that Georgia Power's CDL requirement was itself discriminatory, and he wasn't a "qualified employee" under the Americans with Disabilities Act when he was terminated. *See Davis*, 205 F.3d at 1305. The district court did not err in granting summary judgment on Lewis's intentional-discrimination and reasonable-accommodation claims.

## Retaliation

In addition to prohibiting discrimination, the Americans with Disabilities Act protects disabled employees from retaliation on the basis of "oppos[ing] any act or practice made unlawful by" the Act. 42 U.S.C. § 12203(a). "To establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (emphasis omitted).

We agree with the district court that there's no genuine dispute that Lewis's request for an accommodation was not the cause of his termination. Lewis admitted in his deposition that he was fired not because he requested an accommodation but because he could not get his paperwork in on time to renew his CDL. Lewis testified that he was not "terminated because [he] asked for more time to get [his] paperwork in." Instead, Lewis agreed, he was "terminated because [he] couldn't get [his] paperwork in." Because Lewis hasn't shown a genuine dispute that his request for an

accommodation caused his termination, he hasn't shown a prima facie case of retaliation.

**AFFIRMED.**