[DO NOT PUBLISH]

In the

# United States Court of Appeals

## for the Eleventh Circuit

_____

No. 22-11922

_____

JULIA HOPPLE,

Plaintiff-Appellant,

*versus*

JOINT COMMISSION ON ACCREDITATION OF
HEALTHCARE ORGANIZATIONS, d.b.a. THE JOINT
COMMISION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 21-61209-CIV-COHN/STRAUSS

————————————

Before JORDAN, ROSENBAUM, Circuit Judges, and MANASCO, District Judge.*

MANASCO, District Judge:

Plaintiff Julia Hopple appeals a summary judgment in favor of her former employer, the Joint Commission on Accreditation of Healthcare Organizations ("the Joint Commission"). Ms. Hopple asserts that the Joint Commission violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and the Florida Civil Rights Act ("FCRA") by refusing to provide reasonable accommodations for her disability. The district court found that Ms. Hopple failed to establish that she was a qualified individual under the ADA and the FCRA. After careful review and with the benefit of oral argument, we affirm.

## BACKGROUND

The Joint Commission evaluates and accredits more than 21,000 healthcare organizations located throughout the United States. In February 2012, Ms. Hopple began working for the Joint Commission as a Field Representative, also known as a "Surveyor." Ms. Hopple worked in the home care area, with an emphasis on hospices.

_____

* The Honorable Anna M. Manasco, U.S. District Judge for the Northern District of Alabama, sitting by designation.

The Joint Commission's job description for a Field Representative stated: "Field Representatives, with minimal immediate direction or supervision, survey and/or review health care organizations throughout the United States. Field Representatives apply sophisticated analysis skills and inductive reasoning skills to determine a health care organization's degree of compliance with applicable standards and functionality of care delivery systems." It further stated that surveys of healthcare organizations required "on-site activities, including without limitation inspections, required conferences, tours and interviews with staff."

According to the job description, one of fourteen "principal duties and responsibilities" of a Field Representative was to "[t]ravel extensively, including travel on weekends, at all times of the day/night, and sometimes without prior notice, travel by automobile and on airplanes of all sizes, and travel in all weather conditions." A Field Representative was required to "travel to all types of airports and in whatever type of ground transportation is necessary to enable them to timely perform their duties."

Diane Hill scheduled all surveys for the home care Surveyors, who numbered around ninety. Surveyors submitted to Ms. Hill the weeks they wanted to work about two or three months in advance; Ms. Hill then compared their availabilities with the schedule of surveys that were due in those months.

Ms. Hopple's flight records from 2016 to 2018 establish frequent travel to states in Pacific or Mountain time zones to conduct on-site surveys and audits. In 2016, around thirty percent of Ms.

Hopple's surveys took place in Pacific or Mountain time zones. In 2017, around forty-five percent of her audits took place in Pacific or Mountain time zones. In 2018, around forty-eight percent of her audits took place in Pacific or Mountain time zones. Ms. Hopple did not challenge the statistics presented at her deposition.

Flight records of other Surveyors also establish frequent trips to states located in Pacific and Mountain time zones. Ms. Hopple's Field Director, Wayne Murphy, testified that California was "by far, the busiest" area for home care surveys. A map of "Accredited or Certified Programs by State" shows that California had the highest number of facilities (1,724), which was more than three times that of the second-highest state, Florida (459).

Ms. Hopple was diagnosed with Parkinson's disease in 2012, which is a "chronic, progressive disorder." Around May 2018, Ms. Hopple made her first request to limit her travel to Eastern and Central time zones. She submitted a note from her doctor that stated: "[B]ecause of your Parkinson's disease, you will become stiff and more slow if you are forced to sit for prolonged periods of time. For this reason, I encourage you to take on work that will allow air travel to be 2.5 hours or less. Which would include eastern & central time zones."

Ms. Hopple testified at her deposition that her body would become stiff after prolonged sitting, at which point she would not have as much control over her body and would feel as though she was going to fall over without being able to catch herself. She described two specific episodes in 2018 when she experienced

difficulties with walking after long flights. After a flight to Phoenix, Ms. Hopple needed a porter's assistance to collect her suitcase and get to the rental car bus.

On June 29, 2018, the Associate Director of Employee Relations, Ruth Metsch, notified Ms. Hopple that her request to limit her travel to Eastern and Central time zones could not be granted. Ms. Hopple thus continued to travel to states in Pacific and Mountain time zones.

In December 2018, Ms. Hopple renewed her request to limit her travel to Eastern and Central time zones. This time, Ms. Metsch approved her request for a six-month period beginning January 2019. Ms. Metsch's email to Ms. Hopple on December 20, 2018, stated: "There is no guarantee that it will be extended. As we shared with you, this kind of indefinite accommodation presents operational challenges."

Other Surveyors received accommodations for limited travel, and their accommodations were likewise temporary. Ms. Hopple has presented no evidence of a Surveyor with a permanent accommodation for limited travel. She testified only that she "knew of some people that were regionalized at certain points in time, as well as someone who did not go to the west coast for 15 months."

In April 2019, Ms. Hill emailed Mr. Murphy and asked: "Is [Ms. Hopple] still restricted as the Midwest region? I am running out of options for her." Ms. Hill testified at her deposition that, although she referred to the "Midwest region" in this email, her instructions had been to limit Ms. Hopple's travel to "Central and

Eastern Time Zones" and that Ms. Hopple's assignments in 2019 included surveys in states such as New Jersey, Virginia, North Carolina, and Texas.

Ms. Hill also testified that because there were not enough surveys to assign Ms. Hopple, she had to pull forward some surveys by several months to fill her schedule. According to Ms. Hill, some of the Joint Commission's clients took issues with surveys that were pulled forward, because it meant that they would not benefit from the full three years of accreditation accorded with each survey.

In July 2019, Ms. Hopple requested the continuation of her accommodation. Ms. Metsch denied the request in an email sent on July 22, 2019, explaining that during the accommodation period, the Joint Commission struggled to identify surveys within Eastern and Central time zones and that the accommodation "presented operational challenges that cannot be continued on a longer term, indefinite basis." Ms. Metsch informed Ms. Hopple that she was "expected to travel nationwide" from September, and that "[n]ationwide travel is a requirement of the surveyor role." Ms. Metsch, Mr. Murphy, and Michael Kaba, the Joint Commission's Chief Human Resources Officer, each testified that nationwide travel is an essential function of the Surveyor position.

Ms. Hopple told the Joint Commission that she could not continue working without limiting her travel to Eastern and Central time zones. As Ms. Hopple conceded at her deposition, she did not identify any other accommodation that would allow her to

continue working. Ms. Hopple confirmed her retirement in an email on September 3, 2019.

Ms. Hopple filed suit against the Joint Commission in the Southern District of Florida, alleging discrimination under the ADA and FCRA. The Joint Commission moved for summary judgment on both claims, which the district court granted.

## STANDARD OF REVIEW

We review summary judgments *de novo*. *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant." *Anthony*, 69 F.4th at 804. Courts do not "weigh conflicting evidence or make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016).

"Summary judgment must be granted if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1294 (11th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## DISCUSSION

Because the FCRA is analyzed under the same framework as the ADA, Ms. Hopple's claims can be analyzed together. *Holly v.*

*Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). "To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) [she] is disabled; (2) [she] is a qualified individual; and (3) [she] was subjected to unlawful discrimination because of [her] disability." *Id.* at 1255–56. An employer unlawfully discriminates against a qualified individual on the basis of a disability when it fails to provide reasonable accommodations for the disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A).

## I.    Disability

The ADA defines a "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities of [an] individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C). The ADA includes "walking" in its non-exclusive list of "major life activities." *Id.* at § 12101(2)(A).

The definition of a disability must "be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the ADA]." *Id.* at § 12102(4)(A). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(ii). And "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). "[E]xtensive analysis is not required to determine

whether an individual's impairment is a disability under the ADA." *EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016).

The district court found that Ms. Hopple "clearly presented evidence of a physical impairment that impacts her ability to walk." *Hopple v. Joint Comm'n on Accreditation*, No. 21-61209-CIV-COHN/STRAUSS, 2022 WL 1734473, at *4 (S.D. Fla. May 5, 2022). The district court found that Ms. Hopple "detailed the nature of her walking difficulties" and that her physician "specifically connected these problems to her Parkinson's disease." *Id.*

The district court also distinguished two recent decisions of this Court that the Joint Commission relied on "for the proposition that Plaintiff must provide evidence regarding the severity, frequency, and duration of her impairments in order to permit a finding that her impairments substantially limit a major life activity." *Id.* The district court held that *Lewis v. City of Union City*, 934 F.3d 1169 (11th Cir. 2019), and *Munoz v. Selig Enterprises, Inc.*, 981 F.3d 1265 (11th Cir. 2020), were distinguishable because "the frequency of [Ms. Hopple's] impairments clearly depends on how often she sits for prolonged periods of time," whereas in *Lewis* and *Munoz*, there was no "evidence of an activity or situation that triggered or exacerbated the plaintiffs' conditions." *Id.*

Ms. Hopple argues on appeal that she established her disability with her doctor's note and her own testimony about the effects of Parkinson's disease. Appellant's Br. at 20. Specifically, Ms. Hopple argues that she has presented evidence that Parkinson's

disease causes her body to stiffen after prolonged periods of sitting, resulting in difficulties with walking. *Id*.

The Joint Commission responds that Ms. Hopple has failed to establish a disability because she "failed to identify specific record evidence of the timing, frequency and duration of the alleged impairments resulting from her Parkinson's disease." Appellee's Br. at 46. The Joint Commission concedes that Ms. Hopple presented evidence of losing her balance after sitting for prolonged periods of time and having to seek the assistance of others at the airport to walk. *See id*. at 48–49. But the Joint Commission argues that "[a] condition that occurs only sporadically or when one engages in a particular activity is evidence the impairment is transitory, conditional, and infrequent, and not a substantial impairment[,]" *id*. at 48, and that Ms. Hopple's testimony "reflects a transitory impairment to her ability to walk independently, and not a severe or extended one," *id*. at 49. The Joint Commission again relies on *Lewis* and *Munoz*. *See id*. at 46.

In *Lewis*, the plaintiff alleged that a heart condition substantially limited her ability to sleep and breathe. 934 F.3d at 1180. The plaintiff testified to "periodic" shortness of breath, but without an explanation as to when these episodes occurred or what triggered them; and her doctor testified only that her shortness of breath "could" affect her ability to sleep. *Id*. Because the record was "devoid of evidence of the severity, frequency, and duration of these episodes," we held that the plaintiff did not produce evidence "that

could lead a reasonable jury to conclude that [she] is substantially limited in a major life activity." *Id*.

In *Munoz*, the plaintiff alleged that her ovarian cysts, uterine fibroids, and endometriosis substantially limited her ability to work and sleep. 981 F.3d at 1273. The plaintiff testified that her physical impairments caused "extreme pain, exhaustion, sleep interruption, and lack of bodily function control," but she did not "provide[] evidence of how often and how long she experienced these symptoms." *Id*. We held that we "therefore cannot assess whether her impairments substantially limited her ability to work or sleep as compared to most people in the general population." *Id*.

We did not conclude in *Lewis* or *Munoz* that the plaintiff's limitations in major life activities were too infrequent or transient, or insufficiently severe, to qualify as a disability. Instead, we held the plaintiff could not establish a disability because the record lacked evidence regarding the frequency, severity, and duration of the plaintiff's alleged limitation.

Here, the record contains evidence about the frequency, severity, and duration of Ms. Hopple's limitation in walking: the doctor's note and Ms. Hopple's deposition testimony establish that she experienced difficulties with walking whenever she sat for prolonged periods of time, and that the difficulties consisted of a temporary loss of balance and an increased risk of falling during that time. Again, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. §

1630.2(j)(ii). Ms. Hopple has presented sufficient evidence for a reasonable jury to find that she had a disability.

## II.　Qualified Individual

The ADA defines a "qualified individual" as an "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "[T]he ADA does not require [the employer] to eliminate an essential function of [the plaintiff's] job." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).

Whether Ms. Hopple was a qualified individual turns on whether nationwide travel was an essential function of her job. If it was, she cannot establish that she was a qualified individual, because she did not identify an accommodation that would allow her to travel nationwide. As the employee, Ms. Hopple had "the burden of identifying an accommodation and demonstrating that it is reasonable." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016).

"[A]n employer's 'duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.'" *Id*. at 1255–56 (quoting *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363–64 (11th Cir. 1999)). It is undisputed that the only accommodation that Ms. Hopple identified was to limit her travel to Eastern and Central time zones—a request, in other words, to not travel nationwide.

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires," which do not "include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); *see also Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) ("'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform.").

Whether a particular job function is essential depends upon a case-by-case evaluation of multiple factors. *Samson v. Fed. Express Corp.*, 746 F.3d 1196, 1201 (11th Cir. 2014). Relevant factors include: (1) "[t]he employer's judgment as to which functions are essential"; (2) "[w]ritten job descriptions"; (3) "[t]he amount of time spent on the job performing the function"; (4) "[t]he consequences of not requiring the [employee] to perform the function"; (5) "[t]he terms of a collective bargaining agreement"; (6) "[t]he work experience of past [employees] in the job"; and (7) "[t]he current work experience of [employees] in similar jobs." 29 C.F.R. § 1630.2(n)(3); *see also Samson*, 746 F.3d at 1201. The employer's judgment is "entitled to substantial weight in the calculus," although it is not a conclusive factor. *Samson*, 746 F.3d at 1201.

The district court held that every relevant factor supported a finding that nationwide travel was an essential function of Ms. Hopple's position. In addition to finding that the Joint Commission's judgment and the written job description provided evidence that nationwide travel was an essential function, the district court held that the amount of time Ms. Hopple spent on surveys that

required nationwide travel, specifically travel to Western states, "strongly weighs in favor of a finding that nationwide travel was an essential function." *Hopple*, at \*6. The district court also found that having to pull forward multiple surveys before they were due negatively impacted the Joint Commission's operations, so that the consequence of not requiring Ms. Hopple to perform surveys in Western states "weighs moderately in favor of a finding that nationwide travel was an essential function." *Id*. And because other Surveyors traveled nationwide except for temporary periods of travel accommodations, the district court found that the experience of past and current employees also weighed in favor of finding that nationwide travel was an essential function. *Id*.

No reasonable jury evaluating the applicable factors could find that nationwide travel was not an essential function of Ms. Hopple's position. First, the Joint Commission considered nationwide travel an essential function of a Surveyor, as established by the deposition testimony of its Chief Human Resources Officer, its Associate Director of Employee Relations, and Ms. Hopple's Field Director. Second, Ms. Hopple traveled nationwide from 2016 to 2019, with somewhere between a third and half of her surveys or audits taking place in Pacific and Mountain time zones. Third, other Surveyors also traveled nationwide, making frequent trips to Pacific and Mountain time zones. There is no evidence of a Surveyor who did not travel nationwide on a permanent basis.

Ms. Hopple does not dispute that these factors weigh in favor of finding that nationwide travel was essential. *See* Appellant's

Br. at 26–28. Ms. Hopple argues instead that the job description weighs against such a finding, because "[t]he description of a surveyor's travel duties does not include 'nationwide' travel." *Id*. at 26. That is, Ms. Hopple argues that that the job description requires only "extensive travel," and that "extensive travel does not equate to needing to fly cross-country." *Id*. at 27. But this argument ignores the first sentence of the job description, which states that Surveyors conduct surveys of "health care organizations throughout the United States." A reasonable jury reading the job description would have to interpret "extensive travel" in the light of the earlier reference to "health care organizations throughout the United States," as well as evidence that all Surveyors did in fact travel nationwide.

Ms. Hopple also argues that "[t]he Joint Commission did not have difficulty finding surveyors to perform surveys in Western states" and that "[f]inding surveys only in Eastern and Central time zones [for her] was . . . not a significant burden." *Id*. But it is undisputed that Ms. Hill had difficulty filling Ms. Hopple's schedule while her travel was limited to Eastern and Central time zones in 2019. Ms. Hopple's assertion that the difficulties resulted from Ms. Hill's mistake in limiting her survey assignments to the Midwest, *id*. at 29, is not supported by the record: Ms. Hopple's assignments in 2019 included surveys in states outside of the Midwest. And it is undisputed that Ms. Hill had to pull forward several surveys because of the scheduling difficulties and that pulling forward surveys meant that the Joint Commission clients could not benefit from three full years of accreditation. These undisputed consequences

of allowing Ms. Hopple to not travel nationwide weigh in favor of finding that nationwide travel was an essential function of her job.

In the light of all relevant factors, no reasonable jury could find that nationwide travel was not an essential function of Ms. Hopple's job. And Ms. Hopple did not identify an accommodation that would allow her to perform the essential function of nationwide travel. Accordingly, Ms. Hopple failed to establish that she was a qualified individual under the ADA and FCRA, and her claims under those statutes fail.

## CONCLUSION

We **AFFIRM** the district court's grant of summary judgment in favor of the Joint Commission.